**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | | |
|---|---|---|
| MULTIQUIP INC., a California Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV 08-403-S-EJL |
| | ) | |
| v. | ) | **MEMORANDUM ORDER** |
| | ) | |
| WATER MANAGEMENT SYSTEMS LLC, | ) | |
| a Minnesota Limited Liability Company; | ) | |
| DAVID MUHS and DIANN MUHS, Husband | ) | |
| and Wife; and JOHN DOES I–X; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Before the Court in the above entitled matter is the Defendants'/Third-Party Plaintiffs'

Water Management Systems, LLC ("WMS") and David and Diann Muhs (collectively

"WMS/Muhs") motion for reconsideration of the Court's Order denying their motion for a

temporary restraining order ("TRO").  WMS/Muhs maintains the Plaintiff, Multiquip Inc.,

has breached certain confidentiality agreements by disseminating the confidential and

proprietary information belonging to WMS/Muhs to outside parties such that an injunction

is necessary to prevent irreparable harm.

Having fully reviewed the record herein, the Court finds that the facts and legal

arguments are adequately presented in the briefs and record.  Accordingly, in the interest of

avoiding further delay, and because the Court conclusively finds that the decisional process

would not be significantly aided by oral argument, this motion shall be decided on the record

Memorandum Order - 1

before this Court without oral argument.  Local Rule 7.1(d)(2)(ii).

**Factual and Procedural Background**

This action was initiated by Multiquip who, on September 22, 2008, filed a complaint against WMS/Muhs alleging breach of contract, fraud, intentional misrepresentation, conversion, and related claims.  (Dkt. No. 1).  The claims relate to several patents, trademarks, and copyrights for trailerable engine-powered water pumps belonging to WMS/Muhs.  In 2005, the parties undertook negotiations regarding the sale and/or licensing of the proprietary information held by WMS/Muhs.  During the negotiations, Multiquip claims that the parties entered into a Confidential Disclosure Agreement and an Oral Agreement.  Multiquip alleges the WMS/Muhs breached these agreements and/or made fraudulent misrepresentations regarding the proprietary information that is the subject of the agreements.  (Dkt. No. 1).

On March 5, 2009, WMS/Muhs filed an answer to Multiquip's complaint and third-party complaint against ITOCHU International, Inc. ("ITOCHU") and Itochu Corporation of Japan ("Itochu-Japan") who are the parent and grandparent corporations of Multiquip. (Dkt. No. 38).  The third-party complaint alleges claims for breach of oral agreement, breach of confidentiality agreements, patent infringement, trademark infringement, quantum meruit, unfair competition, misappropriation, and conversion.  (Dkt. No. 38).  The third-party complaint seeks injunctive and monitory relief.  On March 13, 2009, WMS/Muhs filed a motion for TRO based on the same Confidentiality Disclosure Agreement and Oral Agreement as alleged in Multiquip's complaint.  (Dkt. No. 43).  WMS/Muhs also points to

Memorandum Order - 2

a second confidentiality agreement or "stand-still" agreement entered into by the parties that they assert gives rise to injunctive relief.

The Court denied the motion for TRO concluding that WMS/Muhs failed to show that "without the TRO an immediate and irreparable injury, loss, or damage will result" and that "[t]he injury complained of in the motion has been ongoing since January of 2008...[t]he motion for TRO was not filed until March 13, 2009. Thus, the alleged injury has been ongoing for over a year and any irreparable injury has already occurred." (Dkt. No. 50). WMS/Muhs filed this motion to reconsider which the Court now takes up.

## Standard of Law

### I.        Motion to Reconsider

Neither the Federal Rules of Civil Procedure nor the Local Rules provide for a motion to reconsider. However, the Ninth Circuit has stated that motions to reconsider should be treated as motions to alter or amend under Federal Rule of Civil Procedure 59(e). Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1419 (9th Cir. 1984). The scope and purpose of such a motion have been analyzed as follows:

> Motions for a new trial or to alter or amend a judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence. (Citations omitted). These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued. (Citations omitted). Moreover they cannot be used to argue a case under a new legal theory. (Citations omitted).

Federal Deposit Insurance Corp. v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986);

Memorandum Order - 3

> Whatever may be the purpose of Rule 59(e) it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge.
> . . .
> [A] rehash of the arguments previously presented affords no basis for a revision of the Court's order.

Illinois Central Gulf Railroad Company, v. Tabor Grain Company, 488 F.Supp. 110, 122 (N.D. Ill. 1980).

Where Rule 59(e) motions are merely being pursued "as a means to reargue matters already argued and disposed of and to put forward additional arguments which [the party] could have made but neglected to make before judgment, [S]uch motions are not properly classifiable as being motions under Rule 59(e)" and must therefore be dismissed. Davis v. Lukhard, 106 F.R.D. 317, 318 (E.D. Va. 1984). See also, Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983) ("Plaintiff improperly used the motion to reconsider to ask the Court to rethink what the Court had already thought -- rightly or wrongly."). The Ninth Circuit has identified three reasons sufficient to warrant a court's reconsideration of a prior order: (1) an intervening change in controlling law; (2) the discovery of new evidence not previously available; and (3) the need to correct clear or manifest error in law or fact, to prevent manifest injustice. School Dist. No. 1J v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993). Upon demonstration of one of these three grounds, the movant must then come forward with "facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Donaldson v. Liberty Mut. Ins. Co., 947 F. Supp. 429, 430 (D. Haw. 1996).

Memorandum Order - 4

## II.       Temporary Restraining Order

Temporary restraining orders are designed to preserve the status quo pending the ultimate outcome of litigation. They are governed by Federal Rule of Civil Procedure 65(b) which requires the moving party to show "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and....any efforts made to give notice and the reasons why it should not be required."[1] Fed. R. Civ. P. 65(b). Under Rule 65(b) and Ninth Circuit case law, a plaintiff may obtain a temporary restraining order only where he or she can "*demonstrate* immediate threatened injury." See, e.g., Caribbean Marine Servs. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis in original).

## Discussion

In their TRO motion, WMS/Muhs' sought to restrain Multiquip from the use or dissemination of any of the confidential and proprietary information belonging to WMS/Muhs that is encompassed by the Confidential Disclosure Agreement of October 2005 and the "stand-still" agreement of November/December 2005. On reconsideration, WMS/Muhs' desire the same relief. Their motion for reconsideration is based upon: 1) the same grounds as the initial motion and 2) events during a mediation held between the parties following the Court's ruling on the TRO.

---

[1] Federal Rule of Civil Procedure 65(b) states:
The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Memorandum Order - 5

I.          **Newly Discovered Facts**

After the denial of the TRO, the parties pursued mediation.  At the mediation, Multiquip presented two Declarations of Gianfranco Parma which WMS/Muhs claims demonstrate that Multiquip continues to disseminate their confidential and proprietary information causing immediate and irreparable harm.  (Dkt. No. 59, p. 7).  WMS/Muhs argues these prove that Multiquip continues to violate the confidentiality agreements as evidenced by the fact that Multiquip delivered "confidential and proprietary documents to Gianfranco Parma...and having him execute two Declarations."  (Dkt. No. 59, p. 7).  Mr. Parma is an Italian who is listed as a co-inventor on WMS/Muhs' patents.  (Dkt. No. 79).  Mr. Parma has also been listed as a potential witness of Multiquip.  These new events, WMS/Muhs believe, warrant reconsideration.  In particular, WMS/Muhs argue the information disclosed to Mr. Parma in order to obtain these Declarations is confidential.  They further argue that Multiquip is using the Declarations in an attempt to set aside the WMS/Muhs patents and other intellectual property rights.  (Dkt. No. 89, pp. 3-5).  Thus, WMS/Muhs concludes they are suffering irreparable injury and will continue to do so unless Multiquip is restrained.  (Dkt. No. 59).

The two Parma Declarations complained of by WMS/Muhs are in Italian.  (DKt. No. 69, Ex. E).  Multiquip has filed the first eleven pages of the English language translation of the Parma Declaration.  (Dkt. No. 71, Ex. A).  WMS/Muhs states they "are currently unable to determine exactly what they say, but efforts are being made to have them translated."  (Dkt. No. 59, p. 7).  Regardless of the fact that they are unable to read the Declarations,

Memorandum Order - 6

WMS/Muhs maintains that they evidence Multiquip's continuing violation of the

confidentiality agreements. The Court does not find at this time that the Parma Declarations

evidence any breach of the confidentiality agreements by Multiquip. Further, as the Court

concludes below, there is no indication that any revelations made to Mr. Parma, even if they

are ultimately found to be in violation of the parties' agreements, has resulted or will result

in immediate and irreparable damage to WMS/Muhs.[2]

##   II.          <u>Immediate Irreparable Injury</u>

WMS/Muhs maintain that Multiquip has and is violating the terms of the parties'

confidentiality agreements since January 2008 thereby infringing on WMS/Muhs' patent and

trademark rights and causing irreparable harm to the intellectual property rights of

WMS/Muhs. (Dkt. No. 59, p. 7-8). This harm is irreparable, WMS/Muhs argues, because

it has been deprived of its "rightful income," and has been unable to market its intellectual

property to outside parties as a result of this litigation. (Dkt. No. 59, p. 6-7). David Muhs

has supplied a Declaration stating that WMS/Muhs has been irreparably harmed by

Multiquip's use of WMS/Muhs' confidential information "to set aside or invalidate our entire

portfolio of patents" and they are "unable to license the intellectual property portfolio to

anyone else." (Dkt. No. 59, Ex. B). In sum, Mr. Muhs states "[t]his loss of market position,

---

[2] On reconsideration, WMS/Muhs also claims manifest error in the Court's findings that the injury complained of by WMS/Muhs had already been suffered at the time the TRO was filed. As to this point, WMS/Muhs has filed an affidavit of David A. Allgeyer which indicates that WMS/Muhs spent some time in an effort to resolve the parties' conflicts short of filing suit and had not yet been served with the complaint in this action until after they had meet with Multiquip. (Dkt. No. 59, Ex. A). Thus, explaining the time expended before the TRO was filed. Even if this is the case, WMS/Muhs have not shown how the injuries here are immediately irreparable.

Memorandum Order - 7

loss of revenue and goodwill have caused us irreparable harm." (Dkt. No. 59, Ex. B).  The Court finds the loss of income and market contracts are monetary and, therefore, not irrecoverable.  See California Pharmacists Ass'n v. Maxwell-Jolly, ___ F.3d ___, 2009 WL 975458 * 3 (9th Cir. 2009) ("[t]ypically, monetary harm does not constitute irreparable harm."); see also Los Angeles Memorial Coliseum Com'n v. Nat'l Football League, 634 F.2d 1197, 1202 (9th Cir. 1980).

As further evidence of irreparable harm, WMS/Muhs states, without citation to any material, that Multiquip "acknowledged that breaching the confidentiality would cause irreparable harm" (Dkt. No. 59, p. 8).  Presumably, this refers to Mr. Muhs' Declaration which quotes the Confidential Disclosure Agreement: "information is of unique commercial usefulness and that the unauthorized use or disclosure of such information will cause permanent, irreparable and incalculable injury."  (Dkt. No. 59, Ex. B).  Mr. Muhs goes on to aver that the "injury to our company is not merely monetary, as acknowledged by Multiquip itself." (Dkt. No. 59, Ex. B).

The Court has considered WMS/Muhs' argument that the confidentiality agreements signed by the parties provide for injunctive relief but concludes that such relief is afforded where a breach has been found to have occurred.  It is not yet decided whether a breach has occurred and, if so, by whom.  At this stage in the proceedings, the losses appear to be monitory, not immediate and irreparable as is required.  Therefore, the motion for TRO is denied.

Memorandum Order - 8

Here, WMS/Muhs also ask that a hearing be set and take issue with the Court's deciding of the TRO prior to Multiquip filing a response. (Dkt. No. 59, p. 5). WMS/Muhs contends that had the TRO been granted a hearing on a preliminary injunction "would have had to be held soon thereafter, and the issues of the immediate and irreparable harm would have been argued and explored for the Court." (Dkt. No. 59, p. 5). The Court notes for the record that there was no actual request made for a preliminary injunction in the TRO motion. The only references to a preliminary injunction is a brief reference to the Ninth Circuit's standard of review and a statement in the conclusion of the motion that a TRO should be issued "until preliminary injunction can be obtained in preparation for issuance of a permanent injunction." (Dkt. No. 43, p. 6, 8). As such, there was no indication in the TRO motion that a preliminary injunction was requested. At most, the conclusion of the motion implied that future filings would request preliminary and permanent relief. Further, the Court was not required to hold a hearing as it did not grant the TRO. See Fed. R. Civ. P. 65(b). Counsel was mistaken in failing to meet their burden on the TRO motion in its briefing and assuming that a hearing would be held and/or that the Court would automatically set a preliminary injunction hearing.

A hearing is required on motions for TRO or preliminary injunction only if there are contested issues of fact that require credibility determinations. See Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1211 (11th Cir. 2003) (observing that an "evidentiary hearing is not always required before the issuance of a preliminary injunction" unless "facts are bitterly contested and credibility determinations must be made

Memorandum Order - 9

to decide whether injunctive relief should issue") (citations omitted); <u>Cumulus Media, Inc.</u> <u>v. Clear Channel Communications, Inc.</u>, 304 F.3d 1167, 1178 (11th Cir. 2002) (opining that where little dispute exists as to raw facts, and dispute revolves around inferences to be drawn from such facts, it is left to district court's sound discretion to determine whether an evidentiary hearing is necessary by balancing the interests of speed and practicality against those of accuracy and fairness).

Having reviewed the latest submissions on reconsideration, however, the Court finds there are disputes between the parties regarding the facts in this case.  As such and in the interests of judicial economy, the Court will grant the motion to reconsider and convert the motion for TRO into a motion for preliminary injunction.  The Court will set a briefing schedule on the motion and, once ripe, will determine whether a hearing on the motion is necessary.  Counsel is advised to include all of their arguments in the briefing as it there is no guarantee that a hearing will be held.  The Court will also order that the parties complete their joint litigation plan.

## ORDER

THEREFORE IT IS HEREBY ORDERED that Defendant/Third-Party Plaintiffs' Motion for Reconsideration (Dkt. No. 59) is **GRANTED**.  The Motion for TRO (Dkt. No. 43) is converted into a motion for preliminary injunction.

IT IS FURTHER ORDERED that the parties shall adhere to the following briefing schedule:

Memorandum Order - 10

1.  Defendants/Third Party Plaintiffs, WMS/Muhs, shall file their motion and brief in support of preliminary injunction, of no more than twenty pages, on or before June 8, 2009.
2.  Plaintiff, Multiquip, shall file its response brief, of no more than twenty pages, on or before June 22, 2009.
3.  Defendants/Third Party Plaintiffs, WMS/Muhs, shall file any reply brief, of no more than ten pages, on or before June 29, 2009.

IT IS FURTHER ORDERED that the parties shall submit their Joint Litigation Plan

as directed by the Court's Litigation Order (Dkt. No. 6) on or before June 10, 2009.[3]

DATED:  **May 22, 2009**

Honorable Edward J. Lodge
U. S. District Judge

---

[3] The parties submitted a Joint Rule 26(f) Report with attached Exhibits modeled after the Northern District of California LPR.  The Court directs counsel to use the Civil Case Litigation Outline provided by this Court in its Litigation Order (Dkt. No. 6).  The Court is aware of the dispositive motions that have already been filed by the parties and will rule upon these motions in due course.  To that end, Counsel is specifically directed to confer on deadlines for discovery, dispositive motions, and trial dates.