## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| MULTIQUIP INC., a California Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV 08-403-S-EJL |
| | ) | |
| v. | ) | **MEMORANDUM ORDER** |
| | ) | |
| WATER MANAGEMENT SYSTEMS LLC, | ) | |
| a Minnesota Limited Liability Company; | ) | |
| DAVID MUHS and DIANN MUHS, Husband | ) | |
| and Wife; and JOHN DOES I–X; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | | |
| WATER MANAGEMENT SYSTEMS LLC, | ) | |
| a Minnesota Limited Liability Company; | ) | |
| DAVID MUHS and DIANN MUHS, | ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ITOCHU INTERNATIONAL, INC.; and | ) | |
| ITOCHU CORPORATION, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |
| _____ | ) | |

Pending before the Court in the above-entitled matter are motions to dismiss for lack of personal jurisdiction and a motion for default.  The parties have submitted their responsive briefing and the matters are now ripe for the Court's review.  Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately

presented in the briefs and record.  Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, these motions shall be decided on the record before this Court without oral argument.  Local Rule 7.1(d)(2).

## Factual and Procedural Background

This action was initiated by Plaintiff, Multiquip Inc., who, on September 22, 2008, filed a complaint against the Defendants, Water Management Systems, LLC ("WMS") and David and Diann Muhs (collectively "WMS/Muhs").  The Complaint alleges breach of contract, fraud, intentional misrepresentation, conversion, and related claims. (Dkt. No. 1).  The claims relate to several patents, trademarks, and copyrights for trailerable engine-powered water pumps belonging to WMS/Muhs.  In 2005, the parties undertook negotiations regarding the sale and/or licensing of the proprietary information held by WMS/Muhs.  The intent of the negotiations was to license/allow Multiquip the use of WMS/Muhs' pump-related patents, trademarks, and copyrights for a certain amount of money including payment of royalties and compensation.  During the negotiations, Multiquip alleges that the parties entered into a Confidential Disclosure Agreement and an Oral Agreement and that WMS/Muhs breached these agreements and/or made fraudulent misrepresentations regarding the proprietary information.  (Dkt. No. 1).

On March 5, 2009, WMS/Muhs filed an answer to Multiquip's complaint, counter-claims, and a third-party complaint against third-party Defendants ITOCHU International, Inc. ("ITOCHU") and Itochu Corporation of Japan ("ITOCHU-Japan") who

Memorandum Order - 2

are the parent and grandparent corporations of Multiquip.  (Dkt. No. 38).  The WMS/Muhs' counter-claims contend that after the parties had agreed to certain terms of an Oral Agreement that Multiquip breached those terms by making changes to the quality of the production and assembly designs of the pumps resulting in manufacturing difficulties with the products.  (Dkt. No. 38, p. 21).  Multiquip then, WMS/Muhs alleges, used those manufacturing difficulties in bad faith to terminate payments, compensation, and royalties due under the terms of the Oral Agreement.  In addition, WMS/Muhs claim that Multiquip has continued to sell products manufactured based on its proprietary information but manufactured or modified at a lower quality than specified by the designs.  (Dkt. No. 38).

WMS/Muhs' third-party complaint against ITOCHU and ITOCHU-Japan alleges claims for breach of Oral Agreement, breach of Confidentiality Agreements, patent infringement, trademark infringement, quantum meruit, unfair competition, misappropriation, and conversion.  (Dkt. No. 38).  The third-party complaint contends ITOCHU, as the parent of Multiquip, was a party to the Oral Agreement between Multiquip and WMS/Muhs and, therefore, was doing business in Idaho and is subject to personal jurisdiction in this forum. (Dkt. No. 38, p. 36).  As to ITOCHU-Japan, the third-party complaint represents it is the "grandparent corporation of Multiquip, with ultimate powers of control over Multiquip's operations and actions."  (Dkt. No. 38, p. 37).  Because Multiquip's actions alleged in the third-party complaint were at the instruction of ITOCHU who was in turn acting on instructions from ITOCHU-Japan, WMS/Muhs' argue personal jurisdiction over both is appropriate here.

Memorandum Order - 3

On March 26, 2009, ITOCHU filed a motion to dismiss for lack of personal jurisdiction.  (Dkt. No. 53).  On April 14, 2009, WMS/Muhs file a motion for default against ITOCHU-Japan.  (Dkt. No. 70).  On May 14, 2009, ITOCHU-Japan filed its own motion to dismiss for lack of personal jurisdiction.  (Dkt. No. 91).  The Court now takes up these motions.

### Standard of Law

"Personal jurisdiction over a nonresident defendant is tested by a two-part analysis.  First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute. Second, the exercise of jurisdiction must comport with federal due process."  Chan v. Society Expeditions, Inc., 39 F.3d 1398, 1404-05 (9th Cir. 1994) (citing Shute v. Carnival Cruise Lines, 897 F.2d 377, 380  (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991)).  The Ninth Circuit has previously recognized that the Idaho Legislature intended in adopting the long arm statute to exercise all of the jurisdiction available under the Due Process Clause.  Lake v. Lake, 817 F.2d 1416, 1420 (9th Cir. 1987) (citing Doggett v. Electronics Corp. of Am., 454 P.2d 63, 67 (Idaho 1969)).  Thus, the state and federal limits are co-extensive, and an independent review of whether jurisdiction exists under the long arm statute is unnecessary and only the second due process part of the test need be analyzed.  Id.; Data Disc, Inc. v. Systems Tech. Assocs., Inc., 557 F.2d 1280, 1286; Chan, 39 F.3d at 1405.  Federal "[d]ue process requires that nonresident defendants have certain minimum contacts with the forum state so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice."  Id. (citing International Shoe

Memorandum Order - 4

v. Washington, 326 U.S. 310 (1945)).

Personal jurisdiction may be obtained over a defendant where either specific or general jurisdiction are found to exist.  Here, only specific jurisdiction is alleged. Specific jurisdiction exists over a cause of action that arises out of a defendant's forum-related activities.  Panavision Inter. v. L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998).  It is well established in the Ninth Circuit that three conditions must be met before a court may exercise specific personal jurisdiction over a nonresident defendant: (1) the nonresident defendant must purposefully conduct activities within the forum by which it purposefully avails itself of the benefits and protections of the forum; (2) the claim must arise or result from forum-related activities; and (3) the exercise of jurisdiction must be reasonable such that it comports with fair play and substantial justice.  Doe v. Unocal Corp., 248 F.3d 915, 923 (9th Cir. 2001); see also Schwarzenegger, 374 F.3d at 802; Panavision, 141 F.3d at 1320.  Each of these requirements must be met for jurisdiction to comply with due process. Doe v. American Nat. Red Cross, 112 F.3d 1048, 1051 (9th Cir. 1997).

Because this motion is resolved without a hearing, WMS/Muhs need only make out a prima facie case to withstand a motion to dismiss for lack of personal jurisdiction. See Doe v. Unocal, 248 F.3d 915, 922 (9th Cir. 2001); Data Disc, 557 F.2d at 1285.  This requires that WMS/Muhs demonstrate facts that, if taken as true, would support exercising jurisdiction over the Defendants.  Id.  "Although the plaintiff cannot 'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be taken as true."  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004)

Memorandum Order - 5

(citations omitted).  Factual conflicts between the parties contained in their affidavits are resolved in the plaintiff's favor.  See Dole Food Co. v. Watts, 303 F.3d 1104, 1108 (9th Cir. 2002);  AT & T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996).

Defendants, on the other hand, have the burden of establishing that exercise of jurisdiction over it is unreasonable.  Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc., 1 F.3d 848, 851 (9th Cir. 1993).  To determine whether exercise of jurisdiction is reasonable, the following seven factors are balanced: (1) the extent of defendants' purposeful interjection into the forum; (2) the burden on the defendants of litigating in the forum; (3) the extent of conflict with the sovereignty of defendants' state; (4) the forum state's interest in adjudicating the issue; (5) the most efficient judicial resolution of the dispute; (6) the importance of the forum to plaintiffs' interest in convenient and effective relief; and (7) the existence of an alternate forum.  Id.

### Discussion

Multiquip is a subsidiary corporation of ITOCHU who is, in turn, a subsidiary of ITOCHU-Japan.  WMS/Muhs' third-party complaint raises claims against both ITOCHU and ITOCHU-Japan who have in turn each filed motions to dismiss for lack of personal jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(2).  WMS/Muhs argue specific personal jurisdiction is proper against both corporations because their third-party complaint alleges their involvement in finalizing and approving the Oral Agreement between Multiquip and WMS/Muhs caused the eventual failure of the agreement and breach by Multiquip.  (Dkt. Nos. 65, 120).  Both ITOCHU and ITOCHU-Japan contend that they

had no involvement in the negotiations and agreements between Multiquip and WMS/Muhs and that they have engaged in no conduct so as to purposefully avail and/or direct their activities in Idaho such that personal jurisdiction exists.

      I.          <u>Purposeful Availment and Purposeful Direction</u>:

"The purposeful availment requirement ensures that a nonresident defendant will not be haled into court based upon 'random, fortuitous or attenuated' contacts with the forum state." <u>Panavision</u>, 141 F.3d at 1320 (citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985)). "This requirement is satisfied if the defendant 'has taken deliberate action' toward the forum state." <u>Id.</u> (citation omitted). It is not required that a defendant be physically present or have physical contacts with the forum, so long as his efforts are "purposefully directed" toward forum residents. <u>Id.</u> The purposeful direction or availment requirement for specific jurisdiction is satisfied where the defendants have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendants know is likely to be suffered in the forum state. <u>Dole Food Co., Inc. v. Watts</u>, et al., 303 F.3d 1104, 1111 (9th Cir. 2002).

ITOCHU is a company providing trading services for a large number of goods and owns stock in more than twenty subsidiaries. (Dkt. No. 56, p. 2). ITOCHU represents that it acquired 80% of Multiquip's stock but that its status as a parent corporation does not establish personal jurisdiction in Idaho. (Dkt. No. 56, p. 3). It is incorporated and organized under the laws of New York with its principal place of business located in New York. ITOCHU has offices is New York, Washington, D.C., Illinois, California, Oregon,

Memorandum Order - 7

and British Columbia.  ITOCHU contends personal jurisdiction in this District cannot lie because it: (1) has no place of business in Idaho; (2) is not licensed or qualified to do business in Idaho; (3) does not pay taxes to the state of Idaho; (3) has no registered agent for service of process in Idaho, (4) owns no property in Idaho, (4) has no telephone listing or mailing address in Idaho, and (5) holds no account with any bank or financial institution located in Idaho.  (Dkt. No. 56).

ITOCHU-Japan is a Japanese corporation engaged in large general trading with 138 offices located outside of Japan and offices in Tokyo and Osaka, Japan; its books and records are kept in its Japan offices.  (Dkt. No. 92, 93).  ITOCHU-Japan owns Multiquip common stock and is the grandparent company of Multiquip.  (Dkt. No. 93).  It maintains that personal jurisdiction is improper here as it: (1) does not maintain any business office, employees, officers, directors, or agents in the state of Idaho, (2) does not hold a certificate of authority to do business in Idaho, (3) has no registered agent in Idaho, (4) owns no property in Idaho, (5) has no telephone listing or mailing address in Idaho, (6) holds no account with any bank or financial institution located in Idaho, and (7) pays no taxes to the state of Idaho.  (Dkt. No. 93).

Generally, the existence of a parent-subsidiary relationship itself is not sufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes. Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements, Ltd., 328 F.3d 1122, 1134 (9th Cir. 2003) (citing Unocal, 248 F.3d at 925).  An exception to this general rule exists where the subsidiary is the alter ego or agent of the parent entity.  See Unocal, 248 F.3d at 925 ("if the

Memorandum Order - 8

parent and subsidiary are not really separate entities, or one acts as an agent of the other, the local subsidiary's contacts with the forum may be imputed to the foreign parent corporation"). "An alter ego or agency relationship is typified by parental control of the subsidiary's internal affairs of daily operations." Unocal, 248 F.3d at 926 (citation omitted). Here, however, WMS/Muhs' allegations are not that the Defendant corporations are subject to personal jurisdiction because of the actions of their subsidiary but, instead, that the Defendant corporations themselves directed their subsidiary to engage in the allegedly violating conduct giving rise to their claims. WMS/Muhs' third-party complaint alleges that ITOCHU-Japan

> instructed its subsidiary [ITOCHU] to instruct its subsidiary Multiquip to obtain the technology and intellectual property owned by WMS/Muhs for ultimate use by [ITOCHU]-Japan in its de-waterization activities around the globe. Upon further information and belief, the negotiations leading to the oral agreement, and the subsequent attempts to amend the oral agreement to a written finalization were actions taken in bad faith, intended to slow the process and destroy the business of WMS/Muhs and force them to accept a new and subsequent written agreement for far less value than the original oral agreement, and for the bad-faith purpose of passing along WMS/Muhs' confidential and proprietary information to [ITOCHU]-Japan for use in its global operations.

(Dkt. No. 38, pp. 37-38). WMS/Muhs allege the same basis for personal jurisdiction as to both corporate Defendants; arguing they acted in bad faith by insisting on terms to the final agreement that did not track the Oral Contract between Multiquip and WMS/Muhs

Memorandum Order - 9

which facilitated Multiquip's breach of the contract and wrongful appropriation of intellectual property from WMS/Muhs by Multiquip.  (Dkt. Nos. 65, p. 6, 120, p. 5).  These allegations are based on statements in emails exchanged between the parties.  WMS/Muhs argues that in the emails Multiquip acknowledges the terms proposed for the final agreement were different from the Oral Contract and that the changes were "because of requirements of Itochu, our parent company" and that Multiquip management represented to them that before the final agreement could be signed it had to be presented to Itochu and/or Japan for approval.  (Dkt. Nos. 65, p. 6, 120, pp. 5-6).  As such, WMS/Muhs conclude that the two corporations were "materially involved in the contract negotiations between the parties in Boise, Idaho.  ItochuCorp acted through Multiquip, and made wholesale changes materially different from the Oral Contract which the parties sought to memorialize in a signed writing" ... "ItochuCorp did this as a means of wrongfully obtaining the use of their patents, trade secrets, and other intellectual property for its own use."  (Dkt. Nos. 65, p. 6, 120, p. 7).

          In support of these claims, WMS/Muhs have filed a Declaration of David Muhs which describes his perspective of the negotiations and the email reflecting Multiquip's position regarding the terms of the final contract which were based on ITOCHU's directives.  (Dkt. No. 64).  Mr. Muhs' Declaration relays discussions he had with Roger Euliss, the President of Multiquip, and other Multiquip management who mentioned the need to present the written contact to ITOCHU and Japan before it could be finalized and approved.  (Dkt. No. 64, p. 4).  Attached to this Declaration is the email exchange between

Memorandum Order - 10

Mr. Muhs and Mike Ferguson that WMS/Muhs rely upon for their claims against the third-party Defendants.  (Dkt. No. 64, Ex. A).  In that email, Mr. Ferguson wrote:

> We need to get some things resolved, especially the contract.  If anything has changed in the agreement, it is because of requirements of Itochu, our parent company.  If the agreement is not acceptable as last presented, I'm not sure how we can proceed but that's why we need to meet and discuss the matter.

(Dkt. No. 62, Ex. A, p. 3).   In a separate email, Mr. Muhs wrote to Jeff Arswald at Multiquip regarding the proposed contract stating:  "Roger said he needed to do the correct presentation to Japan and that is what was taking the time."  (Dkt. No. 64, Ex. B).  Further, WMS/Muhs have supplied a September 3, 2007 document entitled Licensing Agreement from Roger Euliss that contained comments and questions regarding the parties differences over the terms that stated "State of California is required by MQ parent, Itochu International Inc."  (Dkt. No. 64, Ex. C).

ITOCHU has supplied the declaration of Edward Stieg, Assistant Secretary, ITOCHU International, Inc., which states that "Multiquip Board approval was only required for transactions over $3,000,000 or if it was an introduction of a new product line not related to current business."  (Dkt. No. 54, p. 3).  The agreement at issue in this matter, Mr. Stieg asserts, was for payments of approximately $2,000,000 over five years on a product that was an addition to an existing product line.  (Dkt. No. 54, p. 4).  As such, Mr. Stieg states that approval was not required by either the Multiquip Board of Directors or

Memorandum Order - 11

ITOCHU and that the two entities maintained the corporate formalities as necessary to maintain their separate corporate identities.  (Dkt. No. 54, p. 4).  In addition, ITOCHU filed a Declaration of Robert W. Shaffer, Jr., General Counsel for Multiquip, which states that he was personally involved in the negotiations at issue here and that at "no time was it ever contemplated that [ITOCHU] would sign or otherwise be a party to the license agreement or any consulting agreement."  (Dkt. No. 55).

The Court must take the Plaintiff's allegations here as true.  <u>See</u> <u>Schwarzenegger</u>, 374 F.3d at 800.  Whether these allegations can be proven at trial is left for another day.  <u>See</u> <u>Data Disc, Inc. v. System Tech. Assocs.</u>, 557 F.2d 1280, 1285-86 n. 2 (9th Cir. 1977) ("Of course, at any time when the plaintiff avoids a preliminary motion to dismiss by making a prima facie showing of jurisdictional facts, he must still prove the jurisdictional facts at trial by a preponderance of the evidence.").

The evidence relied upon by WMS/Muhs are statements made by Multiquip or Mr. Muhs regarding the changes to the contract being "because of" ITOCHU and it's "parent corporation."   Taking the evidence provided by WMS/Muhs as true, however, none of the statements provided indicate that final approval was needed from ITOCHU or that ITOCHU directed Multiquip to do anything.  Each of the statements relied upon by WMS/Muhs originated from Multiquip or Mr. Muhs, not ITOCHU.  As such, there has been no showing that ITOCHU purposefully availed itself or directed any activities to this forum in this matter.

Memorandum Order - 12

As to ITOCHU-Japan, WMS/Muhs filed the Declaration of Rick Klingbeil with attached exhibits from the 2008 Annual Report of ITOCHU-Japan purportedly reflecting ITOCHU-Japan's ownership of 100% of Multiquip.  (Dkt. No. 120, Ex. A).  ITOCHU-Japan counter that the evidence offered by WMS/Muhs is inadmissible and the bare allegations in the complaint fail to satisfy the prima facie showing required at this stage.  (Dkt. No. 132, p. 2-3).  In response, ITOCHU-Japan has offered the Declaration of Dai Tamura, section manager in charge of construction machinery business in North America, Europe, and Asia of ITOCHU-Japan.  Mr. Tamura states that corporation formalities have been maintained between ITOCHU-Japan and Multiquip.  (Dkt. No. 92).  As sated previously, the existence of a parent-subsidiary relationship itself is not sufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes.  Harris, 328 F.3d at 1134 (citing Unocal, 248 F.3d at 925).  Further, the lone reference by Mr. Muhs in an email that "Roger said he needed to do the correct presentation to Japan" is not sufficient to make up a prima facie case of personal jurisdiction.  (Dkt. No. 64, Ex. B).  The statement lacks foundation and does not evidence ITOCHU-Japan's purposeful availment/direction of any activities in Idaho.  The Court finds that ITOCHU-Japan has not purposefully availed itself or directed its activities to this forum.  Even if such remote contacts as alleged by WMS/Muhs were sufficient, the Court finds it would violate the fundamental notions of fair play and substantial justice to exercise jurisdiction over ITOCHU-Japan.  Accordingly, ITOCHU-Japan's motion to dismiss shall be granted.

Memorandum Order - 13

II.      The Claims Arise Out of or Result From the Defendants' Forum-Related
         Activities:

To determine whether a plaintiff's claims "arise out" of defendant's forum-related activities, the Ninth Circuit adopted a "but for" analysis. See Ballard, 65 F.3d at 1500 (citing Shute v. Carnival Cruise Lines, 897 F.2d 377, 381 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991)).  Thus, specific personal jurisdiction is proper only where "but for" Defendants' activities in the forum, Plaintiffs' injuries would not have occurred.  Were the Court to have determined that the third-party Defendants had purposefully availed themselves of this forum, WMS/Muhs' allegations would satisfy this portion of the test.  WMS/Muhs' third-party claims are that the third-party Defendants' directed the subordinate entities to engage in the allegedly bad faith negotiations that give rise to their claims.  However, because the Court has concluded otherwise on the other elements of personal jurisdiction, the motions to dismiss will be granted.

III.     Exercise of Jurisdiction Must Be Reasonable:

Had the Court determined above that WMS/Muhs had prevailed on the first two elements, the Court would still grant the motions to dismiss as it would be unreasonable to exercise personal jurisdiction over the third-party Defendants here.  In making the reasonableness determination, the Court examines seven factors to determine whether exercise of jurisdiction is reasonable: existence of an alternative forum; burden on the defendant; convenience and effectiveness of relief for the plaintiff; most efficient judicial resolution of the dispute; conflict with sovereignty of the defendant's state; extent of

Memorandum Order - 14

purposeful interjection; and the forum state's interest in the suit.  Brand v. Menlove Dodge, 796 F.2d 1070, 1075 (9th Cir. 1986) (citations omitted).

"We look first to the burden on the defendant of litigating in the chosen forum...Evaluation of this burden often contemplates a foreign, as in non-U.S., defendant haled to court in the United States. In such cases, '[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.'" Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1174 (9th Cir. 2006) (quoting Asahi, 480 U.S. at 114).   Here, ITOCHU-Japan is located in Japan and would suffer significant prejudice if required to defend itself in this suit in the United States.  The burden upon this Defendant is significant.  As to ITOCHU, the burden is greater than that of WMS/Muhs given it is located in New York and the forum for this action is Idaho.  This disparity, however, is not as significant as that suffered by ITOCHU-Japan given the reality of the fact that travel within the United States is not overly burdensome.

Regardless, exercising personal jurisdiction over the Defendants in this case does not comport with "fair play and substantial justice."  Burger King, 471 U.S. at 476.  In determining personal jurisdiction the Court is focused primarily on "the relationship among the defendant, the forum, and the litigation."  Shaffer v. Heitner, 433 U.S. at 204.  The third-party Defendants here simply have only a very remote, if any at all, connection to this case which is truly a dispute between the originally named parties.  Accordingly, the Court finds it unreasonable to exercise personal jurisdiction over ITOCHU and ITOCHU-Japan and

will grant the motions to dismiss.

      IV.      <u>Motion for Default</u>:

On April 14, 2009, WMS/Muhs have filed a motion for default against ITOCHU-Japan pursuant to Federal Rule of Civil Procedure 55(a).  (Dkt. No. 70).  The motion was made prior to ITOCHU-Japan filing its motion to dismiss on May 14, 2009 and asks that the Clerk of the Court enter default for the parties failure to plead or otherwise defend itself in this matter.  ITOCHU-Japan opposes the motion arguing insufficient service of process.  (Dkt. No. 77).  WMS/Muhs maintains that it has provided sufficient service in this matter so as to have given notice of its complaint to ITOCHU-Japan.  (Dkt. No. 83).

Federal Rule of Civil Procedure 55(a) allows a default to be entered "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided in these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."  In light of the Court's ruling above regarding the motion to Dismiss for lack of personal jurisdiction over ITOCHU-Japan, the Court will deny the motion for entry of default.  <u>See</u> <u>In re Tuli</u>, 172 F.3d 707, 711 (9th Cir. 1999) (citations omitted) (finding a "district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.") (citation omitted); <u>see also</u> <u>King v. Russell</u>, 963 F.2d 1301,1305 (9th Cir. 1992) (finding the "district court properly refused to enter a default judgment against them because there existed no basis for the exercise of personal jurisdiction over them in Arizona.") (citation omitted).

## ORDER

Based on the foregoing and being fully advised in the premises, the Court

**HEREBY ORDERS**:

1)      Defendant ITOCHU International, Inc.'s motion to dismiss (Dkt. No. 53) is **GRANTED**.

2)      Defendant ITOCHU Corporation's motion to dismiss (Dkt. No. 91) is **GRANTED**.

3)      Plaintiff Water Management Systems LLC and David and Diann Muhs' motion for entry of default (Dkt. No. 70) is **DENIED**.

DATED:  **July 29, 2009**

Honorable Edward J. Lodge
U. S. District Judge