UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| MULTIQUIP, INC., a California Corporation<br><br>    Plaintiff/Counterdefendant,<br><br>vs.<br><br>WATER MANAGEMENT SYSTEMS LLC, a Minnesota Limited Liability Company; DAVID MUHS and DIANN MUHS, Husband and Wife; AND JOHN DOES I-X;<br><br>    Defendants/Counterclaimants | Case No.: CV 08-403-S-EJL-REB<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION TO EXCLUDE EVIDENCE (Motion Nos. 4 and 5)**<br><br>**(Docket No. 87)** |

Currently pending before the Court is Defendants' Motion to Exclude Evidence, individual Motion Nos. 4 and 5 (Docket No. 87).[1] Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

**PRELIMINARY STATEMENT**

This Motion relates to an exhibit offered in support of Plaintiff's Motion for Protective Order (Docket No. 67). Within the parties' Joint Status Report (Docket No. 129), however, Defendants argue that the Motion for Protective Order and all related motions are no longer pending as a result of a stipulation reached between the parties. *See* Joint Status Rpt., p. 4

---

[1] Defendants' Motion to Exclude Evidence (Docket No. 87) contains five separate motions. This Memorandum Decision and Order relates only to Motion Nos. 4 and 5; a separate Memorandum Decision and Order will address Motion Nos. 1-3.

**MEMORANDUM DECISION AND ORDER - 1**

(Docket No. 129) ("The parties earlier reached a stipulation that moots the Motion for Protective Order, and all associated filings."). Plaintiff disputes the existence of any such stipulation. *See* Reply in Supp. of Mot. for In-Person Case Mgmt. Conf., p. 3 (Docket No. 137) ("Defendants' cited emails do not show that Plaintiff and Defendants reached a stipulation . . . ."; "The emails do not evidence that Plaintiff's counsel and Defendants' counsel entered into the agreement."; "Plaintiff did not enter an agreement . . . .").

The correspondence Defendants offer in support of any stipulation between the parties is not convincing. It is clear that, whatever the perceived understanding was between the parties as to ex parte contact with Gianfranco Parma, no formal agreement/stipulation was ever reached, let alone entered into. *See, e.g.,* 6/2/09 email from Dykas to Thompson, attached as Ex. A to Thompson Decl., ¶ 3 (Docket No. 136, Atts. 2 &3) ("As long as you file motions like that, I cannot agree to what you propose. . . . . So the answer is no, I will not agree."). Moreover, no stipulation was ever filed with the Court and, likewise, the Motion for Protective Order has not been withdrawn.

With all this in mind, it would appear that the Motion for Protective Order and all related filings, including the instant Motion, remain pending before the Court.

## BACKGROUND

On March 31, 2009, Defendants' counsel, Rick Klingbeil, wrote an email to his client, Defendant David Muhs. *See* 3/31/09 email from Klingbeil to Muhs, attached as Ex. A to Dykas Decl., ¶ 1 (Docket No. 69, Att. 2). On April 8, 2009, Mr. Muhs responded to Mr. Klingbeil via email, also directing his correspondence (with the underlying March 31, 2009 email attached) to Roy Thompson and Matteo Tagliani. *See* 4/8/09 email from Muhs to Klingbeil, Thompson, and

**MEMORANDUM DECISION AND ORDER - 2**

Tagliani, attached as Ex. A to Dykas Decl., ¶ 1 (Docket No. 69, Att. 2). Like Mr. Klingbeil, Mr. Thompson represents Mr. Muhs in this action; Mr. Tagliani, however, does not. According to Defendants, the "autofill" feature on Mr. Muhs' email program inadvertently supplied Mr. Tagliani's name instead of the intended recipient, Mr. Mark Hubert - a third attorney representing Mr. Muhs here. *See* Defs.' Mem. in Supp. of Mot. to Exclude, p. 6 (Docket No. 87, Att. 2).[2]

On April 9, 2009, Mr. Tagliani forwarded the email chain to Mr. Parma - the underlying subject of Plaintiff's Motion for Protective Order. *See* 4/9/09 email from Tagliani to Parma, attached as Ex. A to Dykas Decl., ¶ 1 (Docket No. 69, Att. 2). Mr. Parma then forwarded the same email chain to Roberto Pistolesi later that day. *See* 4/9/09 email from Parma to Pistolesi, attached as Ex. A to Dykas Decl., ¶ 1 (Docket No. 69, Att. 2). Mr. Pistolesi is Plaintiff's Italian counsel. *See* Dykas Decl., ¶ 1 (Docket No. 69, Att. 2) ("Dr. Pistolesi has been retained in this case by Multiquip to represent it in Italian matters."). Not surprisingly, Mr. Pistolesi forwarded the entire correspondence to Plaintiff's counsel, Frank Dykas, on April 9, 2009. *See* 4/9/09 email from Pistolesi to Dykas, attached as Ex. A to Dykas Decl., ¶ 1 (Docket No. 69, Att. 2).

Also on April 9, 2009, Mr. Dykas communicated to Defendants' counsel that he was in receipt of the above-reference email chain, stating that "[b]oth the original email from Rick

---

[2] Defendants claim that, in typing the first two letters of Mr. Hubert's first name, "Mark," the email program's autofill function automatically defaulted to Mr. Tagliani's first name, "Matteo." *See* Defs.' Mem. in Supp. of Mot. to Exclude, p. 6 (Docket No. 87, Att. 2). Defendants claim that neither Mr. Tagliani nor his business, Tower Light, is involved in this case. *See id.* at pp. 6 & 16) ("Neither Tower Light nor Mr. Tagliani [is] involved in this case."; "It is only by unfortunate circumstance that [Mr. Tagliani] was tangentially associated with the facts of this lawsuit through his work in the Italian pump industry with one of the companies Mr. Muhs had dealt with previously.").

**MEMORANDUM DECISION AND ORDER - 3**

Klingbeil and Mr. Muhs' response were published." *See* 4/9/09 email from Dykas to Swartz, Hubert, Klingbeil, and Thompson, attached as Ex. B to Dykas Decl., ¶ 2 (Docket No. 69, Att. 3). That same day, Mr. Thompson responded to Mr. Dykas, demanding that Mr. Dykas "return this document and keep no copy as it was a privileged communication between attorney and client." *See* 4/9/09 email from Thompson to Dykas, attached as Ex. C to Dykas Decl., ¶ 3 (Docket No. 69, Att. 4). On April 10, 2009, Mr. Dykas rejected Mr. Thompson's demand, stating that he had fully complied with all pertinent legal authority. *See* 4/10/09 email from Dykas to Thompson, attached as Ex. C to Dykas Decl., ¶ 3 (Docket No. 69, Att. 4). Later on April 10, 2009, Defendants' local counsel, Eric Swartz, notified Mr. Dykas that FRCP 26(b)(5)(B) applied to support Mr. Thompson's previous request to "return and destroy" the at-issue correspondence. *See* 4/10/09 email from Swartz to Dykas and Thompson, attached as Ex. D to Dykas Decl., ¶ 4 (Docket No. 69, Att. 5). The next day, Mr. Dykas dismissed Mr. Swartz's email, claiming that FRCP 26(b)(5)(B) "does not apply in this type of situation, only to documents turned over during discovery." *See* 4/11/09 email from Dykas to Swartz and Thompson, attached as Ex. D to Dykas Decl., ¶ 4 (Docket No. 69, Att. 5).

Unable to stipulate to a protective order relating to Defendants' ex parte contact with Mr. Parma, Plaintiff proceeded to file its Motion for Protective Order (Docket No. 67), attaching as an exhibit the email exchange between Mr. Muhs and his counsel. This Motion followed.

## DISCUSSION

The attorney-client privilege has been recognized as "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege, however, is not absolute; it may be waived by the client either

**MEMORANDUM DECISION AND ORDER - 4**

implicitly, by placing privileged matters in controversy, or explicitly, by turning over privileged documents.  Inadvertent disclosures can also result in a waiver of the privilege.  *See Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 24 (9th Cir. 1981); *United States v. de la Jara*, 973 F.2d 746, 749 (9th Cir. 1992).  Until recently, three primary approaches existed to determine whether an inadvertent disclosure constituted a waiver of privilege.  The first approach - the traditional or strict approach - held that an inadvertent disclosure *always* constituted a waiver of privilege.  The second approach - the "no waiver" approach or "subjective intent test" - held that an inadvertent disclosure does not constitute a waiver of privilege without extreme or gross negligence.  The third approach - the "skeptical balancing test" - gave the court discretion in determining whether the inadvertent disclosure results in a waiver.

Enacted on September 19, 2008, FRE 502 outlines the "middle ground" for determining whether an inadvertent disclosure operates as a waiver of the attorney-client privilege.  *See* Fed. R. Evid. 502 Advisory Committee Notes.  FRE 502(b) states:

> When made in a Federal proceeding or to a Federal office or agency, the disclosure does not operate as a waiver in a Federal or State proceeding if:
>
> (1)  the disclosure is inadvertent;
>
> (2)  the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3)  the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

*See* Fed. R. Evid. 502(b).  Therefore, when deciding whether inadvertently-produced documents waives any privilege, a two-step analysis must be done.  First, it must be determined if the

**MEMORANDUM DECISION AND ORDER - 5**

material in question is actually privileged; it is axiomatic that FRE 502 does not apply unless privileged or otherwise protected documents are produced. Second, if privileged documents are produced, a waiver does not occur unless the three elements of FRE 502(b) are satisfied: (1) the disclosure must be inadvertent, (2) the holder of the privilege took reasonable steps to prevent the disclosure, and (3) the holder promptly took reasonable steps to rectify the error. Defendant Muhs, the disclosing party, has the burden to prove that the elements of FRE 502(b) have been met. *See Relion, Inc. v. Hydra Fuel Cell Corp.*, 2008 WL 5122828, *2 (D. Or. 2008).[3]

Therefore, to resolve Defendants' Motion, the Court will first determine whether the disclosed material is privileged. If it is not, the inquiry ends; if the material is privileged, the Court will then apply FRE 502(b). If the Court concludes that Defendants satisfied all of the elements of FRE 502(b), the privilege is not waived. If, however, Defendants fail to satisfy any of the FRE 502(b) requirements, the privilege is waived.

### A.    The Correspondence is Privileged

Pursuant to FRE 501, federal law governs the availability and scope of the attorney-client privilege in nondiversity actions. *See Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*,

---

[3] Plaintiff argues against the general applicability of FRE 502(b) here. *See* Mem. in Opp. to Mot. to Exclude, p. 11 (Docket No. 100) (". . . for Rule 502(b) to apply, the disclosure must be made in a Federal proceeding. Defendant David Muhs did not send the email in a federal proceeding. Matteo Tagliani and Tower Light are not involved in the federal proceeding between Plaintiff and Defendants."). Even when assuming that FRE 502(b) applies here, Plaintiff's interpretation of it is too rigid. While the term "federal proceeding" is not defined within FRE 502(b), the Rule's Explanatory Notes suggest to the Court's satisfaction that FRE 502(b) applies broadly to conduct taking place within the context of a federal proceeding. *See, e.g.*, *Kumar v. Hilton Hotels Corp.*, 2009 WL 1683479, *2 (W.D. Tenn. 2009) ("[I]nadvertent disclosures of protected communications or information *in connection with a federal proceeding* or to a federal office or agency does not constitute a waiver if the holder . . . ." (Emphasis added)). In the Court's view, the correspondence Plaintiff seeks to introduce by way of Defendants' waiver of any privilege was made in connection with this case and, therefore, made in a federal proceeding as that term is used in FRE 502(b).

**MEMORANDUM DECISION AND ORDER - 6**

881 F.2d 1486, 1492 (9th Cir. 1989).  The Ninth Circuit recognizes the essential elements of the attorney-client privilege as: (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at this instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) unless the protection be waived.  *See id*. (citing *In re Fischel*, 557 F.2d 209, 211 (9th Cir. 1977)).  The purpose of the attorney-client privilege is to encourage candid communications between client and counsel.  *Upjohn*, 449 U.S. at 390-91; *see also In re Fischel*, 557 F.2d at 209.

Here, there is no question in the Court's mind that the correspondence at issue represents attorney-client privileged communications.  However the definition is phrased (*see supra* at pp. 6-7), four elements are required to establish the existence of the attorney-client privilege: (1) a communication; (2) made between privileged persons; (3) in confidence; and (4) for the purpose of seeking, obtaining, or providing legal assistance to the client.  The underlying correspondence from Mr. Klingbeil to Mr. Muhs on March 31, 2009 (*see supra* at p. 2) satisfies these elements, as does the April 8, 2009 correspondence from Mr. Muhs to Messrs. Klingbeil, Thompson, and Tagliani (*see supra* at pp. 2-3).  Plaintiff appears to concede as much, choosing not to argue against the existence of any attorney-client privilege but, instead, whether the privilege was waived by Mr. Muhs' subsequent disclosure to a third party.  *See* Mem. in Opp. to Mot. to Exclude, p. 11 (Docket No. 100) ("Defendants waived the attorney-client privilege when they sent the email at issue to third party Matteo Tagliani of Tower Light.").

Having established the application of the attorney-client privilege here, the question turns to whether FRE 502(b) applies to protect that privilege from Mr. Muhs' subsequent disclosure.

**MEMORANDUM DECISION AND ORDER - 7**

**B.     Mr. Muhs Did Not Waive the Attorney-Client Privilege**

As discussed above, to maintain the protections afforded by the attorney-client privilege, FRE 502(b) requires that (1) Mr. Muhs' disclosure be inadvertent; (2) Mr. Muhs took reasonable steps to prevent disclosure; and (3) Mr. Muhs promptly took reasonable steps to rectify his error (*see supra* at pp. 5-6). These elements are satisfied here.

1.     Element No. 1: Inadvertent Disclosure:

The analysis under FRE 502(b)(1) essentially asks whether the party intended a privileged document to be produced or whether the production was a mistake. *Compare* FRE 502(a)(1) (discussing waiver that is "intentional" in contrast to FRE 502(b)(1)'s requirement for waiver to be "inadvertent"). Mr. Muhs' Declaration (Docket No. 87, Att. 4) unequivocally establishes that his email to Mr. Tagliani was inadvertent. *See* Muhs Decl. ¶ 4 (Docket No. 87, Att. 4) ("Before I noticed the mistake, I hit send and the email, containing information and advice from my attorney concerning this case, was unintentionally misdirected to Mr. Tagl[i]ani."). Moreover, it does not stretch the boundaries of one's imagination to see how such a situation can happen. As one commentator noted:

> Because of recent advancements in communication technology, more documents are exchanged today than ever before. This recent proliferation of both electronic communications and electronic documents has dramatically increased the frequency with which mistakes can happen. Consequently, it is easier to make a mistake. Now it only takes the click of a mouse - an accidental "reply to all," for example - to inadvertently transmit a privileged electronic file.

8 N.C.J.L. & Tech. 231, 233 (Spring 2007). Mr. Muhs made a mistake - a potentially costly mistake in that, regardless of whether Defendants' Motion is granted, the "cat is out of the bag" with respect to Plaintiff's counsel's awareness of Defendants' original strategy for contacting

**MEMORANDUM DECISION AND ORDER - 8**

Mr. Parma. Whether such knowledge affects the parties' interactions moving forward remains to be seen. Still, for the purposes of FRE 502(b), there is no real dispute that Mr. Muhs did not intend to forward along his privileged correspondence between him and his counsel to a third party. The Court therefore finds that Mr. Muhs' April 8, 2009 email to, among others, Mr. Tagliani, was not intended and, thus, inadvertent.[4]

    2.    <u>Element No. 2: Reasonable Steps to Prevent Disclosure</u>

It is difficult to assess, after-the-fact, the steps that Mr. Muhs took to prevent the disclosure at issue. To be sure, his disclosure is not comparable to the typical document production with, potentially, thousands of documents transferring hands between parties. In this latter example, precautionary protocols (e.g., a "privilege review) are typically taken to ensure that privileged materials are not revealed. These protocols, in turn, are contrasted against reasonable standards when assessing whether materials produced inadvertently through discovery waive any privilege. However, Mr. Muhs conduct cannot be subject to a similar analysis; indeed, there is no protocol to critique.

---

[4] Plaintiff acknowledges that Mr. Muhs mis-sent his email to Mr. Tagliani, however argues that doing so outside a discovery context amounts to a waiver. *See* Mem. in Opp. to Mot. to Exclude Evidence, p. 13 (Docket No. 100) ("Defendants did not mis[ ]-send the email in discovery."). The Court is not convinced that any protections accompanying a party's inadvertent disclosure apply only when made during discovery. *See* Fed. R. Evid. 502 Advisory Committee Notes ("[This Rule] responds to the widespread complaint that litigation costs necessary to protect against waiver of attorney-client privilege or work product have become prohibitive due to the concern that *any* disclosure (however innocent or minimal) will operate as a subject matter waiver of all protected communications or information." (Emphasis added)). First, Plaintiff offers no authority limiting such an application. Second, and more fundamentally, the Court sees no legitimate reason for limiting the attorney-client privilege's protections to discovery situations. Either the privilege applies or it does not; likewise, the privilege is either waived or it is not. Whether this takes place within a discovery context is immaterial toward maintaining the privilege under FRE 502(b).

**MEMORANDUM DECISION AND ORDER - 9**

Instead, it must be recognized that an email program's autofill function operates as both a blessing and curse - saving users time when addressing email correspondence, yet risking the potential for sending that correspondence to an unintended recipient. Here, consistent with his standard of practice with respect to corresponding with his counsel via email, Mr. Muhs utilized his email program's autofill feature to list his communication's addressees. *See* Muhs Decl., ¶ 3 (Docket No. 87, Att. 4) ("I had previously sent several hundred emails to one or more of my three attorneys using the same email program, the same method, and its default "autofill" feature."). However, this time, as a result of the autofill function, instead of reaching his attorney, Mr. Hubert, Mr. Muhs' email was delivered to Mr. Tagliani. *See id*. at ¶ 4 ("As best I can tell, and upon information and belief, . . . I began to type the name of Mark Hubert, one of my attorneys in this case. The email program apparently autofilled Mr. Matteo Tagliani's email address from my address book, and not Mark Hubert's. I had no reason to believe the email program would not do exactly as it had before, and fill in Mark Hubert's email address.").

Mr. Muhs' care in addressing his email was hasty and imperfect.[5] Nevertheless, "he relied on a system that had worked in a particular way in the past to continue working the same way in the future." *See* Mem. in Supp. of Mot. to Exclude, p. 16 (Docket no. 87, Att. 2); *see also Maldonado v. New Jersey ex rel. Administrative Office of Courts*, 225 F.R.D. 120, 129 (D.N.J. 2004) ("Persuasive precedent from other jurisdictions support the determination that the attorney-client privilege can remain intact despite a one-time leak of privileged information.").

---

[5] In this respect, the Court understands Plaintiff's position. *See* Mem. in Opp. to Mot. to Exclude Evidence, p. 13 (Docket No. 100) ("Defendant Muhs could easily have checked the email addresses within his email. There were only three email addresses listed on the email. There is no reason whatsoever that defendant David Muhs did not check the listing of email addresses in the "send to" section of his email before he sent the email. The process required an additional glance at the email addresses to determine whether they were correct or not.").

**MEMORANDUM DECISION AND ORDER - 10**

Under these circumstances, it cannot be said that Mr. Muhs' isolated act was unreasonable. Therefore, the Court finds that Mr. Muhs took reasonable steps to prevent the disclosure.

        3.        <u>Element No. 3: Reasonable Steps to Rectify the Error</u>

"Inadvertent disclosure has been held to be remedied when the privilege is asserted immediately upon discovery of the disclosure and a prompt request is made for the return of the privileged documents." *United States v. Rigas*, 281 F. Supp. 2d 733, 741 (S.D.N.Y. 2003) (internal quotation omitted). Here, on the same day (almost within the hour) Mr. Muhs' counsel became aware of their client's inadvertent disclosure, Mr. Muhs' counsel contacted Plaintiff's counsel to assert the attorney-client privilege and request the correspondence's return. *See supra* at pp. 3-4. Also, the next day, Mr. Muhs' local counsel contacted Plaintiff's counsel to reiterate the claim for attorney-client privilege and the request for the email's return. *See id*. at p. 4.[6] The relative contemporaneousness of Mr. Muhs' counsel's response to Plaintiff's counsel's revelation that he had received Defendants' attorney-client communications supports a finding that Mr. Muhs, through his counsel, took reasonable steps to remedy his initial error.[7]

---

     [6] Additionally, shortly after learning of the misdirected email, Mr. Klingbeil advised Mr. Muhs to do a number of things to ensure there would be no more mis-sent emails, including: (1) erasing Mr. Tagliani's address from Mr. Muhs' email program's address book, (2) checking to see if the autofill program worked as expected, (3) sending email to just one attorney who would then forward it as necessary, and (4) creating a "group" to send certain emails rather than relying on the autofill process. *See* Muhs Decl., ¶ 5 (Docket No. 87, Att. 4). Mr. Muhs undertook these steps. *See id*.

     [7] Plaintiff appropriately points out that other, third-parties are also in receipt of the inadvertently-sent email, but argue that "Defendants do not offer any evidence that they have requested the third[-]party to return or destroy the document." *See* Mem. in Opp. to Mot. to Exclude Evidence, p. 15 (Docket No. 100). It is through their Motion to Exclude Evidence that Defendants seek to limit Plaintiff's (as a party to this action) use of the inadvertently-sent email. This Order, therefore, necessarily speaks only to Plaintiff's use of that e-mail.

**MEMORANDUM DECISION AND ORDER - 11**

**ORDER**

Based upon the foregoing, IT IS HEREBY ORDERED that Defendants' Motion to Exclude Evidence, individual Motion Nos. 4 and 5 (Docket No. 87) is GRANTED as follows:

1. The at-issue email correspondence attached as an exhibit to Plaintiff's Motion for Protective Order is excluded; Plaintiff is directed to destroy all originals/copies of the at-issue email.

2. The at-issue email correspondence attached as an exhibit to Plaintiff's Motion for Protective Order, and any additional copies in the record, are to be placed under seal.



DATED: **November 23, 2009**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 12**